IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>             Plaintiff<br><br>vs.<br><br>FRONTIER COMMUNICATIONS CORPORATION<br><br>             Defendant | Case No. <u>5:13-cv-01191</u> |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND TO STAY BRIEFING
<u>PENDING COMPLETION OF DISCOVERY</u>**

Aimed at protecting consumers from privacy-infringing automated telephone calls and unwanted solicitations, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits telemarketing calls to numbers listed on the Do Not Call Registry, unless the caller has the recipient's signed, written consent 47 C.F.R. § 64.1200(c)(2). The TCPA also bans initiating telephone calls using an automated telephone dialing system or "autodialer" to cellular phones. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

Plaintiff, Diana Mey ("Plaintiff"), in her complaint ("Complaint") alleges that Defendant Frontier Communications Corporation ("Frontier"), or some person on its behalf, made non-emergency calls using an ATDS to Plaintiff's cellular telephone without her prior express consent. The Plaintiff has reason to believe that thousands of other consumers, similarly situated, received illegal telemarketing calls from Frontier, or from telemarketers working for Frontier. Accordingly, Plaintiff respectfully requests that, pursuant to both Fed.R.Civ.P. 23(b)(2)

and 23(b)(3), this Court certify this case as a class action for the following classes of similarly situated persons:

Class 1:

>All persons in the United States who, within four years prior to the filing of this action, Defendant or some person on Defendant's behalf called on their cell phone using a device with the capacity to dial numbers without human intervention, where Defendant's records fail to indicate prior express consent from the recipient to make such call.

Class 2:

>All persons within the United States whose phone numbers were registered on the Do Not Call Registry, and who, within the four years before the filing of the initial Complaint, received more than one telemarketing call within any twelve-month period from, or on behalf of, Frontier.

Plaintiff further requests that the Court appoint the Plaintiff as the class representative, and the undersigned attorneys as class counsel. The Plaintiff files this motion at this time, although a Motion to Dismiss is pending and discovery is ongoing, in order to avoid the plaintiff from being "picked off" through a Rule 68 or individual settlement offer. *See e.g. Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). The Plaintiff respectfully requests that this Court stay briefing on the motion and provide Plaintiff sufficient discovery to further support and supplement this motion.

## I. THE TELEPHONE CONSUMER PROTECTION ACT

Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of autodialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted, prerecorded

messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them. Thus, and as applicable here, Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"[1]

## II.   RELEVANT FACTS

Plaintiff is a West Virginia resident. (Compl. ¶6.) Defendant Frontier Communications Corporation, is a telephone company that is headquartered in Stamford, CT and offers voice, broadband, satellite video, and wireless internet data access for individuals and small businesses. (Compl. ¶¶ 7-8.) Frontier is the largest communications company providing services predominantly to rural areas and small and medium-sized towns and cities in the U.S. The Company operates in 27 states, and is the nation's fourth largest Incumbent Local Exchange Carrier (ILEC), with 3.1 million customers as of March 31, 2013 (Compl. ¶¶ 9.)

On July 3, 2013, Plaintiff received an autodialed call on her cell phone from the number 855-308-8557 and after an audible click and significant pause the calling party stated, "This is Kimberly McGuiness calling on behalf of Frontier Communications." (Compl. ¶ 23-25.) On

---

[1] The term "automatic telephone dialing system" encompasses not only traditional autodialers, but also predictive dialers and any other equipment with the "capacity to dial numbers without human intervention." *Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citation omitted).

3

July 23, 2013, the plaintiff received an identical phone call to another phone belonging to her. (Compl. ¶ 27-30.) The Plaintiff is not a customer of Frontier, did not give Frontier permission to call her cell phone using an automatic telephone dialing system and in fact, both calls were placed to a phone number that Plaintiff had listed on the national Do Not Call Registry. (Compl. ¶ 31-33.) Since at least 2011, Frontier has received complaints about illegal telemarketing calls from the same number displayed on the Plaintiff's caller ID and Frontier has failed to take adequate steps to end this illegal telemarketing. (Compl. ¶ 39-40.)

Accordingly, the Plaintiff seeks declaratory and injunctive relief, as well as actual and statutory damages, for Defendant's violations of Section 227(c) of the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf; Section 227(b)(1) by (a) initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf.

## ARGUMENT

Plaintiff seeks certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure. Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Fed. R. Civ. P. 23; *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named-representative and his counsel

have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Plaintiff submits that all requisites for certification are satisfied.

    **A.    Numerosity**

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) (holding that impracticable does not mean impossible, but simply difficult or inconvenient). To satisfy this requirement, there is no "magic minimum number that will breathe life into a class," *Id.* (citing *Jones v. CCH–LIS Legal Information Servs.*, 1998 WL 671446, *1 (S.D.N.Y. 1998). However, in this circuit "numerosity is presumed at a level of 40 members". *Rail Corp v. Town of Hyde Park*, 47 F.3d 473, 483 (1995).

Numerosity in this case will be easily satisfied. While Plaintiff is yet to conduct first and third-party discovery to identify the recipients of Frontier telemarketing calls, class counsel will likely obtain call records identifying thousands (if not more) of consumers who received illegal Frontier telemarketing calls on their cell phones. Through these call records, Plaintiff can obtain names and addresses of recipients, and the disposition of each call.

    **B.    Commonality.**

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class

"depend upon a common contention…of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* As a leading treatise explains:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need be only a single common issue to all members of the class. Therefore, this requirement is easily met in most cases.

1 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 3.01, 3-49-3-50 (3d ed. 1992 & June 2002 supplement). This case presents many common questions, including:

- Whether Frontier violated the TCPA by engaging in advertising by unsolicited telemarketing calls;
- Whether Frontier engaged in a pattern of using an automatic telephone dialing system to call telephone numbers assigned to cellular telephone service;
- Whether Frontier placed calls to cellular telephone numbers using an automatic telephone dialing system without obtaining the recipients' prior consent for the call;
- Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Frontier's actions.

These common issues satisfy the commonality requirement.

### C. Typicality.

Typicality requires that Plaintiff's claims be typical of other class members. Fed. R. Civ. P. 23(a)(3). "Typicality ... requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Richards v. FleetBoston Financial Corp.*, 235 F.R.D. 165, 173 (D. Conn. 2006) (citing *Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 63 (D. Conn. 2003)). "Minor conflicts, however, do not make a plaintiff's claims atypical; it is when the conflict goes to the very subject matter of the litigation that the conflict will defeat the claim of representative status." *Walker*, 214 F.R.D. at

63-64 (quoting *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y.1995)). "Differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." Richards, 235 F.R.D. 165 at 173 (citing *Ouellette v. International Paper Co.*, 86 F.R.D. 476, 480 (D. Vt. 1980).

Here, Ms. Mey's claims are typical of those of class members. All claims arise out of the same legal theories, as typicality requires. Like class members, Ms. Mey received telemarketing calls to her cellular phone from or on behalf of Frontier in alleged violation of the TCPA. Individualized inquiry into the nature of the Frontier telemarketing calls, the degree of intrusion into the affairs of class members, or other details beyond the fact of the transmission of the calls themselves, is not required to establish the TCPA violation, and therefore is not relevant. The typicality requirement is met.

### D.    Adequacy.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Richards*, 235 F.R.D at 169 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997). Rule 23(a)(4) "requires courts to ask whether plaintiff's interests are antagonistic to the interest of other members of the class." *Id.* Disagreement as to the type of damages sought, however, does not mean representation is inadequate. *Id.* at 170.

Ms. Mey has no conflicting interests with class members. In fact, by investigating, filing, and vigorously prosecuting this case, she will demonstrate a desire and ability to protect class members' interests. She has elected not to pursue solely her individual claims in this matter, but

instead is standing up for others who, like her, have been subjected to unlawful telemarketing intended on or behalf of Frontier.

Just as Ms. Mey is committed to the prosecution of this case, so too are her lawyers, who request appointment as class counsel. The undersigned class counsel collectively have more than twenty-five years of experience litigating TCPA class actions in state and federal courts, and have obtained significant TCPA class action certifications and settlements that reviewing courts have approved as fair and adequate. Class counsel will litigate this case vigorously to protect the best interests of the class. Plaintiff respectfully submits the Rule 23(a)(4) adequacy requirement is satisfied.

### E. Predominance.

A court may grant class certification under Rule 23(b)(3) of the Federal Rules if an action meets all Rule 23(a) requirements and, in addition:

> (3) the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3) *(emphasis added);* see generally *Amchem Prods., Inc.,* 521 U.S. at 615-616. (addressing predominance and superiority requirements). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at 623. Specifically, "class-wide issues predominate if resolution of some of

the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PainWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Several considerations combine in this case to satisfy Rule 23(b)(3). First, the common issues predominate. All claims arise under the same federal statute, all involve the same elements of proof, and all involve the same alleged misconduct—telemarketing in violation of the provisions of § 227(b), and telemarketing to persons listed on the federal DNC Registry in violation of § 227(c).[2] Second, because class member damages are fixed by statute at $500 to $1,500 per violation, the calculation of classwide damages is greatly simplified, and requires no inquiry into the individual circumstances of each class member. Not surprisingly, courts have recognized that actions for fixed statutory damages are particularly appropriate for class certification. See, e.g., *Blair v. Equifax Check Svcs.*, 181 F.3d 832, 836 (7th Cir. 1999); see also *Chisholm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 568 (E.D. Va. 2000) (where, as here, each class member was entitled to minimum statutory damages regardless of finding of actual injury, "the calculation of the statutory minimum damages can be achieved with minimal impact on the Court's workload and while preserving the rights of the parties").

---

[2] Plaintiff anticipates that Frontier will oppose class certification on the ground that purported issues of consent preclude class certification. Many courts have rejected that argument in TCPA cases. *See, e.g., Agne v. Papa John's Int'l, Inc.,* 2012 WL 5473719, *11 (W.D. Wash. Nov. 9, 2012) (consent does not preclude certification where defendant is best able to come forward with evidence of consent); *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 263 P.3d 767, 778 (Kan. 2011); *Hinman v. M & M Rental Ctr.,* 545 F. Supp. 2d 802, 806-807 (N.D. Ill. 2008) (purported issue of consent to receive faxes in violation of the TCPA is insufficient to defeat class certification, and contrary decisions misunderstand the fundamental nature of blanket mass marketing).

**F.     Superiority.**

Finally, the instant class action is superior to any other method available to fairly and efficiently adjudicate the Class members' claims.  The inquiry into whether the class action is the superior method for a particular case is accurately framed as class litigation as opposed to individual litigation. *See Easterling v. Connecticut Dept. of Correction*, 278 F.R.D. 41, 50 (D. Conn. 2011) (where the court held that the difficulties of class action litigation were "far less daunting than the difficulties involved in litigating over a hundred separately captioned actions."). "By determining this case's common remedial questions on a class-wide basis, the court will 'significantly reduce[ ] the burden on any individual victim of discrimination to obtain relief,'" *Id.* (quoting *U.S. v. City of New York*, 276 F.R.D. 22, 49 (E.D.N.Y. 2011); *Amchem Prods., Inc., et al. v. Windsor*, 521 U.S. 591, 615 (1997) (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights").

The TCPA, its allocation of statutory damages in an amount not to exceed $1,500 and its lack of a mechanism to award attorneys' fees, effectively means that it is not economically viable for class members to pursue claims against Frontier on an individual basis.  This consideration is particularly compelling here.  As the United States Supreme Court has stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual action to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.,* 521 U.S. at 609 (citing *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).   Many decisions recognize the benefits of class certification in cases involving

small individual recoveries, in the context of consumer cases generally,[3] and TCPA cases in particular.[4] The overriding justification for certification of these claims is compelling, and applies with equal force here:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied.

*In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977); *see also Brown v. Kelly*, 244 F.R.D. 222, 238-39 (S.D. N.Y. 2007); *see also Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) ("The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.").[5] For all these reasons, the class action device is the superior means of resolving this case.

---

[3] *See, e.g., Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) ("Such a small possible recovery [of approximately $125] would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute."), *cert denied,* 129 S. Ct. 608 (2008); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D. N.Y. 2009); *Drossin v. National Action Fin. Servs., Inc.*, 255 F.R.D. 608, 617 (S.D. Fla. 2009); *Del Campo v. American Corrective Counseling Servs., Inc.*, 254 F.R.D. 585 (N.D. Cal. 2008); *In re Farmers Inc. Co. FCRA Litig.*, 2006 WL 1042450, *11 (W.D. Okla. April 13, 2006).

[4] Many federal courts have certified TCPA actions. *See e.g., Agne v. Papa John's Int'l, Inc.*, No. C10-1139-JCC, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Sparkle Hill, Inc. v. Interstate Mat Corp.*, No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 2012 WL 3027953 (W.D. Mich. July 24, 2012); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327 (E.D. Wis. 2012); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012); *Siding & Insulation Co. v. Combined Ins. Group, Ltd.*, No. 1:11 CV 1062, 2012 WL 1425093 (N.D. Ohio Apr. 23, 2012).

[5] Regarding "the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B), Frontier is best positioned to provide relevant information regarding individual actions.

**CONCLUSION**

For these reasons, Plaintiff respectfully requests the Court grant his motion.  However, because class discovery has yet to commence, Plaintiff requests that this Court stay briefing of this motion pending completion of discovery and supplemental briefing as to class certification.

Respectfully submitted,

/s/ Nicholas J. Cicale
Nicholas J. Cicale, Esq.
CEnergy Law
24 Camp Avenue
P.O. Box 4658
Stamford, CT 06907
(203) 516-0668
nicholascicale@cenergylaw.com
Federal Bar No. ct29283

John W. Barrett
Jonathan Marshall
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
*Subject to Pro Hac Vice*

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net
*Subject to Pro Hac Vice*