## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly
situated,

               Plaintiff

vs.                                    Civil Action No. 13-cv-01191-RNC

FRONTIER COMMUNICATIONS
CORPORATION

               Defendant

## PLAINTIFF'S REPLY IN SUPPORT OF HER FIRST MOTION TO COMPEL

Plaintiff Diana Mey ("Plaintiff" or "Ms. Mey") issued discovery requests aimed at

learning information concerning: (1) the nature and extent of Frontier's telemarketing activities

and its knowledge of telemarketing violations being committed by its agents and other third-

parties working on its behalf, and (2) the size and identity of the class. Frontier does not deny

that it is in possession of electronic information regarding complaints it received related to

telemarketing it conducted as well as information that identifies putative class members, but

argues that it does not have to produce that information until a class is certified, despite the fact

that it undoubtedly intends on opposing Plaintiff's eventual motion for class certification. *See*

Opposition at 8-12. [DE No. 67]

Contrary to Defendant's assertions, the discovery sought herein is of the type that is

routinely permitted in this type of case, because it is necessary to establish both liability and that

the case can be certified as a class action. The Court should grant Plaintiff's motion, and compel

Defendant to respond to Plaintiff's discovery requests.

I.      **Pursuant to this Court's Local Rules, Defendant's Pending Motions Do Not Absolve Them of Their Discovery Obligations.**

Defendant argues that it should not be required to respond to Plaintiff's discovery due to the fact that it has filed a motion to dismiss and have other pending discovery motions. Opposition at 7-8.  This Court has already rejected essentially the same argument by denying Defendant's Motion to Stay Discovery [DE No. 38].  The Court ordered the Defendant to provide substantive responses to discovery in spite of the pendency of that Defendant's Motion to Dismiss. *See* [DE No. 49].  Moreover, absent a court order or other rule, Fed.R.Civ.P. 26(d)(1) permits parties to initiate discovery, and receive responses to that discovery, once they have conferred pursuant to Fed.R.Civ.P. 26(f).  Defendant does not cite any order or rule that supersedes this timing, and plaintiff is not aware of any.  The parties held their Fed.R.Civ.P. 26(f) conference before this discovery was served in October.  There has been no Order from this Court that relieves the Defendant of their discovery obligations, and pursuant to this Court's local rules and the prior orders of this Court, the Defendant should participate in discovery.

II.     **This Court Has Not Bifurcated Class and Merits Discovery, and Defendant's Attempt to Do So In Opposition to a Motion to Compel Should be Rejected.**

Next, Defendant argues that it should be permitted to draw a distinction between the discovery it must produce now and in the event this matter is certified as a class action pursuant to Fed.R.Civ.P. 23, this is incorrect.  According to Fed.R.Civ.P. 26(d)(2), the "default" is that all discovery proceeds at once absent a court order, motion or agreement of the parties:

> Sequence. Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:
>
> (A) methods of discovery may be used in any sequence; and
>
> (B) discovery by one party does not require any other party to delay its discovery.

The Federal Rules, economy and fairness dictate that if a party wants to pursue a phased discovery schedule, such a request should be made by motion at the beginning of a case, not months after discovery has been propounded.

**III.    Defendant Should be Compelled to Produce the Only Information that Exists to Identify Class Members.**

Defendant makes two arguments as to why the Plaintiff should be precluded from obtaining the identities of class members contained in the records of the telemarketing calls made: (1) Plaintiff's limited purpose for seeking the call records relates to numerosity and (2) The Plaintiff is not entitled to the names and addresses of class members. *See* Opposition at 8-9.

At no point has the Plaintiff claimed that the call records were limited to establishing numerosity.  This request goes to a number of the Rule 23 factors.  It is relevant to numerosity for the reasons that the Defendant concedes, but it is also relevant to commonality because the factual similarities for the four years of telemarketing campaigns will be unveiled in the call logs. The sources of the telephone number called, which may be identified in the call logs and accompanying information can be relevant to a typicality analysis.  Indeed, Defendant's Opposition unintentionally concedes the relevance of the logs as to ascertainability—as Defendant claims that it cannot segregate the over 20 million calls to identify the calls that violated the TCPA—which will surely be part of Defendant's ultimate opposition to class certification.  *See* Opposition at 11-14.

This was the same conclusion a judge in California reached at the end of January while compelling a request similar to the Plaintiff's, finding:

> The magistrate judge ordered HRRG to produce all "outbound dial lists" and "reports for each outbound dial list"…Although HRRG will stipulate to having called at least 100 cellular telephone numbers with its dialing system using an artificial voice, thereby satisfying Rule 23's "numerosity" requirement, the

magistrate judge held that the proposed discovery is relevant to other requirements for class certification:

> [N]umerosity is not the only issue. Rather, the proposed discovery of telephone numbers called by autodialer will tend to prove or disprove whether a class is ascertainable, whether Webb is typical of the class, and whether there are questions of fact common to the class.

> HRRG contends that, contrary to the magistrate judge's order, the outbound call list bears no relevance to commonality, ascertainability, or typicality…HRRG contends that in light of its concession that it called at least 100 cellular telephone numbers utilizing an artificial voice, the requested outbound dial list holds no relevance to the commonality inquiry…Defendants fail to explain why the outbound dial list is irrelevant to establishing whether the calls were made using an ATDS. After all, the magistrate judge specified that the outbound dial list must show "all telephone numbers called by HRRG *utilizing an autodialer*[.]'" [1] Accordingly, if HRRG provides the list as described in the order, the document would likely bear on the commonality inquiry…It was not "clearly erroneous" or "contrary to law" for the magistrate judge to conclude the outbound dial list is relevant to commonality.

*See Webb v. Healthcare Revenue Recovery Group LLC*, 2014 U.S. Dist. LEXIS 11091, *5-7

(N.D. Cal. Jan. 29, 2014).

While it is true that Plaintiff's initial discovery request asked for, *inter alia*, the names and addresses of class members, with respect to this request, the Plaintiff is simply moving to compel the electronic information maintained by the Defendant's telemarketing logs, the only responsive information it maintains it has.

Faced with an identical argument in a TCPA telemarketing class action in Maryland, a district court compelled the telemarketing logs for the Plaintiff's proposed putative class period. In *Law Offices of Leonard I. Desser, P.C. v. Shamrock Communs.*, *Inc.*, 2013 WL 2244811 (D. Md. May 21, 2013), the Court held that Defendant could not unilaterally limit its discovery responses to recipients of junk faxes in the same state as Plaintiff who received the identical fax,

---

[1] In this matter, one of Plaintiff's claims is that her cellphone was called with an autodialer without her prior express consent.

calling the limitation untenable in light of the fact that the Plaintiff was pursuing a nationwide class. *Id.* at *4.  This argument mirrors Frontier's assertion that the only telemarketing logs that need to be produced are those that include the Plaintiff.  As in *Shamrock*, this Court should reject that unilateral limitation, and compel discovery that is consistent with the Plaintiff's class definition.

## IV.  Plaintiff's Class Definitions are not "Fail Safe" and Are Not a Basis to Refuse to Produce the Documents Requested.

Defendant's next argument is that the telemarketing logs should not be produced because the Plaintiff's class definitions are "improper fail-safe classes."  *See* Opposition at 11-13. Defendant's argument that the class definitions are "fail-safe" is premised on the notion that because the TCPA prohibits calls to cellular telephones using an auto-dialer unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class.  While attacks on preliminary class definitions are disfavored in TCPA cases,[2] the fact remains that the information Plaintiff seeks is relevant to any class definition they offer at the class certification stage.  If, in advance of a motion for class certification, an expert is required in order for the Plaintiff to meet her burden that class members are ascertainable, she will do so.  This is not a basis for the Defendant to withhold the only information that can identify those class members.

---

[2] *See, e.g.*, *Meyer v. Receivables Performance Mgmt., LLC*, No. C12-2013, 2013 WL 1914392 (W.D. Wash. May 8, 2013); *Freed v. Metro Marketing*, No. 12-6201, 2013 WL 5466637, at *3 (D.N.J. Sept. 30, 2013); *Onley, 2013 WL 5476813*, at *10-16; *Iniguez v. The CBE Group*, ---F. Supp.2d---, No. 2:13-00843, 2013 WL 4780785, at *6 (E.D. Cal. Sept. 5, 2013); *Law Offices of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*, No. 12-2600, 2013 WL 2244811, at *2-3 (D. Md. May 21, 2013); *Blair v. CBE Group Inc.*, No. 13-134, 2013 WL 229155, at *5 (S.D. Cal. May 13, 2013); *St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.*, No. 4:12-02224, 2013 WL 1076540, at *4-7 (E.D. Mo. Mar. 13, 2013).

**V.       Frontier Should Be Compelled To Produce All Telemarketing Complaints In Its Possession or Control.**

Defendant objects to producing complaints concerning illegal telemarketing.  *See* Opposition at 14-16.  The relevance of such a request would seem obvious.  If Frontier was aware of illegal telemarketing and failed to act accordingly, such a failure to act would be relevant to any necessary merits theory of ratification.  Frontier's knowledge of and response to consumer telemarketing complaints is also relevant to whether or not Frontier had the authority to control, train and discipline those engaged in illegal telemarketing on Frontier's behalf. Further, if Frontier was aware of prior telemarketing complaints and failed to take appropriate remedial action, such could also certainly be relevant to whether or not Frontier's violation of the TCPA was made "willfully or knowingly." *See* 47 U.S.C. §§227(b)(3); 227(c)(5).

Although the relevance of such requests in the context of this case are clear on their face, any doubt in this regard was eliminated by the Federal Communications Commission in its recent Memorandum and Order as to the scope of vicarious liability under the TCPA.  *See In Re Joint Pet. Filed by Dish Network, LLC*, 28 F.C.C.R. 6574, May 9, 2013).  Specifically, the FCC ruled that sellers like Frontier may be held vicariously liable for certain telemarketing calls under a broad range of agency principles, including not only *formal agency*, but also principles of *apparent authority* and *ratification*." *Id.* ¶ 28.  As to formal agency, the FCC explained that sellers like Frontier are "liable under [§§ 227(b) and (c)] for calls made by a third party telemarketer when it has authorized that telemarketer to market its goods or services.  In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised." *Id.* ¶ 47.  As to apparent authority, the FCC explained that "apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is

6

traceable to a manifestation of the principal.'" *Id.* ¶ 34 (quoting Restatement (Third) of Agency § 2.03, cmt c.).  As to ratification, the FCC recognized that liability also may attach under a ratification theory if a seller- such as Frontier - "ratifies those [illegal] acts by knowingly accepting their benefits." 2013 FCC Ruling ¶ 34 (quoting Restatement (Third) of Agency § 4.01, cmt. d).  Put differently, "a seller may be bound by the unauthorized conduct of a telemarketer if the seller 'is aware of ongoing conduct encompassing numerous acts by [the telemarketer]' and the seller 'fail[s] to terminate,' or, in some circumstances, 'promot[es] or celebrat[es]' the telemarketer."  2013 FCC Ruling ¶ 34.

    Despite the crystal clear connection between the request at issue and the liability theories in this case, Frontier objects to the production of telemarketing complaints relating to statutes other than the TCPA, and even to telemarketing complaints that refer to sub-sections of the TCPA that do not exactly match the calls made to Ms. Mey.  Under Frontier's definition of "relevance," all other consumer telemarketing complaints in Frontier's possession are *per se* irrelevant and Plaintiff's continued efforts to obtain these complaints is a "nonsensical" "fishing expedition" that is "corrupt" and "logically flawed."  *See* Frontier Opposition Memorandum at pg. 15.  Although long on hyperbole, Frontier's argument is short on substance.  Under Frontier's view of relevance, only those consumer telemarketing complaints that explicitly refer to the Do Not Call Registry or to the use of an ATDS to contact a cell phone without prior express consent, are the ***only*** types of telemarketing complaints that it need produce.  Accordingly, a consumer telemarketing complaint that merely informed Frontier that an unwanted telemarketing call had been received would not have to be produced- as it was not sufficiently precise as self-defined by Frontier.  Likewise, a telemarketing complaint asking that Frontier cease making future calls, or a telemarketing complaint that referred to state and not

federal telemarketing law would not have to be produced, as they do not fall within Frontier's set parameters for what it deems relevant to the class claims.  Similarly, a telemarketing complaint referring to the receipt of a telemarketing call via an ATDS would not have to be produced where the complaint did not also reference receipt on a cell phone and did not indicate whether or not prior express had been granted.  Under Frontier's view of the law of relevance, even a consumer telemarketing complaint that referred by name to the Telephone Consumer Protection Act would not have to be produced unless such a complaint also referred to the exact sub-section of the statute as that which relates to the calls made to Ms. Mey.

If Frontier's objections stand and they are permitted to produce only those telemarketing complaints and investigatory materials that specifically mention the National Do Not Call Registry, or which explicitly refer to the 1) use of an ATDS, 2) to telemarketing to a cell phone, 3) without prior express consent, it is highly likely that Plaintiff will be deprived of evidence expressly deemed relevant by the FCC—*i.e.*, whether Frontier knew or should have known of illegal telemarketing, and whether it took effective steps within its power to cause such misconduct to cease. By "force of logic," because telemarketing complaints of all types in Frontier's possession and control are relevant to both vicarious liability, and to whether Frontier's violation of the TCPA was knowing or willful, Frontier should be compelled to produce all consumer complaints in any way relating to telemarketing, and all documents relating to Frontier's investigation to such complaints and any response, without limitation.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court grant her Motion to Compel.

Respectfully Submitted,

/s/Anthony I. Paronich
Anthony I. Paronich
Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
Tel (617) 680-0049
aparonich@broderick-law.com
ted@broderick-law.com
(*pro hac vice*)

John W. Barrett
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia  25301
(304) 345-6555
jbarrett@baileyglasser.com
(*pro hac vice*)

Nicholas J. Cicale, Federal Bar No. ct29283
CEnergy Law
24 Camp Avenue
P.O. Box 4658
Stamford, CT 06907
(203) 516-0668
nicholascicale@cenergylaw.com

Dated:  March 26, 2014

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of the foregoing was filed through this Court's CM/ECF system, and that all attorneys of record will be sent a copy of the same electronically through that system.

/s/ Anthony Paronich
Anthony Paronich

DATED: March 26, 2014