## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff<br><br>vs.<br><br>FRONTIER COMMUNICATIONS CORPORATION<br><br>        Defendant | Civil Action No. 13-1191-MPS |

**Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement with Integrated Memorandum in Support**

## I.  INTRODUCTION

After more than three years of contested litigation and extensive discovery, Plaintiff Diana Mey and Defendant Frontier Communications Corporation have reached a proposed class settlement. Plaintiff seeks preliminary certification of a settlement class and the approval of her proposed form and method of class notice, all as set forth in the Settlement Agreement.[1] If approved, the settlement will resolve all claims asserted in this class action. Preliminary approval of the Settlement is in the best interests of the class and satisfies the requirements of Rule 23.

## II.  STATEMENT OF CASE AND SUMMARY OF PROPOSED SETTLEMENT

On August 20, 2013, Plaintiff Diana Mey filed a class action Complaint, claiming that Frontier placed thousands of telemarketing calls to consumers in violation of the Telephone

---

[1]     The Stipulation of Class Action Settlement, with all exhibits, is attached to this Memorandum at Exhibit 1.

Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA"). The parties then engaged in contested litigation for over three years, including exhaustive motions practice on the edges of developing Supreme Court case law, taking extensive written discovery, conducting eight depositions, and issuing seven third-party subpoenas. Plaintiff retained two expert witnesses, as did Defendant. The Parties mediated before retired federal Magistrate Judge Edward A. Infante on October 12, 2015, but were unable to reach a settlement.

On June 3, 2016, Frontier filed a renewed motion to dismiss, asserting that under *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016), Plaintiff's complaint should be dismissed because she did not suffer a sufficiently concrete injury in fact for standing under Article III of the United States Constitution. (Dkt. 136)  Plaintiff opposed the motion (Dkt. 137), which she buttressed with a notice of supplemental authority from the Northern District of West Virginia. (Dkt. 138). Frontier filed a reply in further support of its motion to dismiss on July 25, 2016 (Dkt. 141).

With factual discovery complete, and the opinions of the experts in the case thoroughly vetted, and with Frontier's potentially dispositive motion to dismiss pending, the parties re-engaged in settlement talks, agreeing to return to San Francisco for a second mediation with Judge Infante on August 18, 2016. Although this mediation did not directly result in a settlement, the parties made further steps towards agreeing in principle to settle the claims against Frontier on a class-wide basis.  The parties continued direct negotiations over the following three months, and were able to reach the terms of the Settlement now presented to the Court for preliminary approval.

Plaintiff respectfully submits that the Settlement readily meets the standard for preliminary approval as articulated by the U.S. Court of Appeals for the Second Circuit and the

United States Supreme Court. The essential elements of the proposed agreement, discussed in greater detail below, include:

- The class consists of all individuals or entities whose phone numbers were identified as having received (i) on a cell phone, a call placed by means of what Plaintiff contends was an Automatic Telephone Dialing System ("ATDS") or (ii) two or more calls in a 12 month period  on a number on the National Do Not Call Registry for more than 30 days at the time of the calls.

- Notice will be provided to all class members via both direct mail and by posting to a case specific website.

- Frontier will pay $11,000,000 (eleven million dollars) into a common fund to pay class members, the class representative award and attorneys' expenses and fees.

- Class members do not need to do anything in order to receive their share of the fund. Checks will be mailed to class members without the need to file claims.

- All class members will receive at least $90; the balance of the fund will be divided on a per call basis to class members who received multiple calls.

- In the event any checks are not cashed from the initial distribution, if economically feasible, a second round of checks will be issued to class members who did cash their first checks. Any monies remaining after the distribution to the class will be donated to a *cy pres* charity recommended by the parties and approved by the Court.  The parties propose the Connecticut Legal Services, Inc. as the *cy pres* designee.

## III. THE COURT SHOULD CONDITIONALLY CERTIFY A SETTLEMENT CLASS

Plaintiff requests that the Court conditionally certify the Settlement Class. Conditional (or provisional) certification will permit the Claims Administrator to provide notice of the proposed settlement to the Settlement Class to inform them of the existence and terms of the Settlement Agreement, their right to opt out or object to the Proposed Settlement, and the date, time and location of the formal fairness hearing.

The Settlement Class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 provides that class certification is appropriate upon a showing by the plaintiff that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the parties are

typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-614 (1997). In order to obtain certification under Rule 23(b)(3) the plaintiff must also show that common questions of law and fact predominate over individualized questions, and that the class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

### A.     The Proposed Class Satisfies the Numerosity Requirement

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable." In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone. *Assif v. Titleserv.*, 288 F.R.D. 18, 22 (E.D.N.Y. 2012) ("There is no magic minimum number that will breathe life into a class, but generally, courts will find a class sufficiently numerous when it comprises forty or more members.") (internal quotation marks omitted)*; Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984) ("No specified number is needed to maintain a class action."). Factors to consider include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Assif*, 288 F.R.D. at 22 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993)).

"'A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982). "[T]he court may assume sufficient  numerousness where reasonable to do so in absence of a contrary showing by defendant, since  discovery is not essential in most cases in order to reach a class

determination . . . .  Where the  exact size of the class is unknown, but it is general knowledge or common sense that it is large,  the court will take judicial notice of this fact and will assume joinder is impracticable."  2  Newberg on Class Actions (3d ed. 1992), §722.A.

In this case, the class includes 36,219 unique telephone numbers belonging to class members. Individual joinder is impractical, especially considering the relatively small amount of each penalty and the geographic dispersal of class members across the country. Courts have certified class actions with far fewer members. *Newberg on Class Actions* § 3.05 (contending that at forty members a presumption of numerosity should arise) (citing cases); *Assif v. Titleserv.*, 288 F.R.D. at 22 (noting that forty members is generally considered sufficient); *see also Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members).

The proposed class satisfies the numerosity requirement of Rule 23(a)(1).

**B.     Rule 23(a)(2) – Commonality – and Rule 23(b)(3) – Common Questions of Law or Fact Predominate**

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Class members' claims "must depend upon a common contention . . . that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Assif*, 288 F.R.D. at 24 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Because TCPA litigation, like this case, typically involves thousands of alleged violations of the TCPA that are often substantially similar, if not identical, to one another, courts frequently find commonality. *See, e.g.*, *Targin Sign, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.  Supp.2d 894 (N.D. Ill. 2010); *CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill. 2009); *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361 (S.D. Cal. 2008); *G.M. Sign,  Inc. v. Franklin Bank*,

*S.S.B.*, 2008 WL 3889950 (N.D. Il. 2008); *Hinman v. M and M Rental  Ctr., Inc.*, 545 F. Supp.2d 802 (N.D. Ill. 2008); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007).

In this case, the common questions of fact and law include:

- Do the telemarketing calls placed using the Five9 dialing system constitute the use of an "automatic telephone dialing system" as that term is defined in the TCPA? This issue is well-suited for class treatment, because all calls to class members were made using a single dialing system.

- Is Frontier vicariously liable for the telemarketing calls placed by Virido? This question focuses on the relationships and dealings between Frontier and Virido, and not on issues relating to individual class members.

- Did the alleged violations at issue constitute "willful" or "knowing" violations of the TCPA, which could entitle all class members to treble damages under the TCPA?

Accordingly, the commonality and predominance requirements of Rule 23 are satisfied.

**C.    The Proposed Class Satisfies the Typicality Requirement**

To establish typicality under Rule 23(a)(3), the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." This requirement demands that class claims be fairly encompassed by the claims of the class representatives.

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 173 (D. Conn. 2006) (*citing Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 63 (D. Conn. 2003)). "Typicality requires that a class representative has the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."

*Kemp-DeLisser v. Saint Francis Hospital & Med. Ctr.*, No. 15-cv-1113, 2016 WL 6542707 at \*11 (D. Conn. Nov. 3, 2016) (internal quotation marks omitted).

Typicality and commonality often merge.  As noted by the Supreme Court, these two prerequisites, along with the adequacy of representation requirement "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

Here, the class representative's claims are clearly aligned with those of the class. Ms. Mey alleges that she, like all class members, received automated telemarketing calls that were commissioned by Frontier and placed to them by Virido on the Five9 predictive dialer pursuant to a contract between Frontier and Virido using a list of telephone numbers that Frontier provided. As a result, the standardized course of conduct applies to all of the class members in the same way.

All claims are based on the same legal theories, and arise out of the same alleged course of conduct. The proposed class therefore meets Rule 23(a)(3)'s typicality requirement.

### D.       The Class Representative will Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). As stated by the U.S. Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591:

> The adequacy inquiry … serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.

*Id.* at 625-26.

Courts usually look simply to whether the named plaintiff's interests are in any way antagonistic to or in conflict with those of the class members. *In re Playmobil Antitrust Litig.*, 35 F. Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'").

Ms. Mey has no conflicting interests with class members. Rather, she shares an interest with the other class members in opposing the Defendant's alleged telemarketing practices, and has willingly stepped forward to pursue her claims on a class-wide basis. Demonstrating her commitment to the class, Ms. Mey refused to accept Frontier's Rule 68 offer of judgment of $6400—which would have, if accepted, led to dismissal of the lawsuit and her having to abandon pursuit of the claims of potential class members. *See* Doc. No. 105*, Mey v. Frontier Communs. Corp.,* 2014 U.S. Dist. LEXIS 177575, at *5 (December 9, 2014); *see also Bank v. Alliance Health Networks, LLC*, --- F. App'x ----, 2016 WL 6128043, at *1-2 (2d Cir. Oct. 20, 2016) (holding that acceptance of Rule 68 offer by named plaintiff moots his individual claims and precludes pursuit of claims on behalf of a putative class). By investigating, filing, and vigorously prosecuting this case, Ms. Mey has demonstrated a desire and ability to protect class members' interests.

Rule 23(a)(4)'s adequacy requirement is satisfied.

**E.      The Class Action is Superior to Other Available Methods for Resolving This Controversy**

Rule 23(b)(3) further requires a court to determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The rule provides that the factors "pertinent" to such include: (A) the interest of members of the class in

individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. P. 23(b)(3).

Because this is a settlement class, there is no concern with manageability of the case. *See Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

A class action is the superior method for the fair and efficient adjudication of this controversy. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

> Although a determination of superiority necessarily depends greatly on the circumstances surrounding each case, some generalizations can be made about the kinds of factors the courts will consider in evaluating this portion of Rule 23(b)(3). The rule requires the court to find that the objectives of the class-action procedure really will be achieved in the particular case. In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.

*Stillmock v. Weis Markets*, 385 Fed.Appx. 267, 274 (4th Cir. 2010) (*quoting* 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed.2005)).

This principle is particularly applicable to the instant case and weighs heavily in favor of class certification as the most superior method of adjudication. With respect to some of the violations alleged in this case, the TCPA provides for minimum statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). Enforcement of this statute, however, requires individual consumers to initiate litigation, incur costs, and sacrifice time to prosecute individual actions. Few people will invest the time and resources to litigate individual TCPA cases for the prospect of recovering $500 per call in statutory damages. The interest of class members in individually controlling the prosecution of separate  claims is small.

Finally, Rule 23(b) requires that the Court consider the desirability of proceeding via class action in contrast to allowing individual claims to proceed on their own. As to these elements of the analysis, class certification is the preferred course. The alleged misconduct in this case flows from alleged telemarketing practices that are  alleged to be factually uniform as to individual class members.  Based on extensive discovery, Plaintiff's experts have identified a class of individual and entities that own 36,219 unique telephone numbers who, should they not opt out of the settlement, will automatically receive a meaningful cash payment. In the absence of this class settlement, the individual litigation of this large number of claims would consume a vast amount of judicial resources in trial courts across the United States. Class settlement of this dispute is by far the most efficient and effective means to resolve the claims of the named plaintiff and absent class members.

**F. Proposed Class Counsel are Qualified to Represent the Class.**

Finally, should the Court certify the proposed Settlement Class and appoint Plaintiff as class representative, the Court must also appoint counsel pursuant to Rule 23(g)(l).  In pertinent part, that rule requires consideration of:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). There is a general presumption of such competence for all members of the bar in good standing unless evidence to the contrary is adduced. *E.g., Hertz v. Canrad Precision Industries, Inc.*, No. 69 CIV 174, 1970 WL 236, *1 (S.D.N.Y. 1970) ("Plaintiffs' counsel are experienced in the area of law involved in this case.  Until the contrary is clearly demonstrated, we will assume that members of the bar are skilled in their profession. . . . In point of fact, we find substantiation of the skill of plaintiffs' counsel in the papers submitted to this Court on the instant motion."); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bankr.E.D.N.Y. 1986) (same).

    In this case, the Plaintiff has hired lawyers who are experienced in class action and consumer litigation, each of whom have significant experience litigating TCPA consumer class actions to provide the required level of representation. *See* Exhibits 2-6, Affidavits of Plaintiff's Counsel. These affidavits set forth Plaintiff's counsel's qualifications to represent the interests of the class.

## IV. THE PROPOSED SETTLEMENT

### A.  <u>The Settlement Class</u>

    For settlement purposes only, the parties have stipulated to the certification of a class of individuals and entities that own 36,219 unique telephone numbers identified by Plaintiff's expert witnesses Jeffrey Hansen and Anya Verkhovskaya. Hansen and Verkhovskaya identified these numbers, and a method of identifying their owners, from their analysis of the call records produced in this case as having either received a call placed to a cell phone by means of the ATDS alleged to have been used by Defendant's vendor, or as having received more than two

phone calls in a 12 month period while having been listed on the National Do Not Call Registry for more than 30 days at the time of the first call.  *See* Exhibit 1, Settlement Agreement § 3.01, 2.40, 7.02.

### B.  Settlement Fund and Notice[2]

The proposed settlement obligates Frontier to establish a settlement fund of $11,000,000.00 ("Settlement Fund"). *See* Exhibit 1, Settlement Agreement ¶¶ 2.42, 4.01. Each Settlement Class Member shall receive a base payment of $90 per person drawn on the Settlement Fund and then additional payments *pro rata* based on the number of telemarketing calls that were initiated to the Settlement Class—with the result that each class member will receive $90 or more.

If approved, Class Counsel will cause notice to be given to all individuals or entities on the Class List within 30 days of the entry of the Preliminary Approval Order of the class. Members of the class who received telemarketing calls promoting Frontier will receive direct notice via mail.  *See* Exhibit 1, Settlement Agreement ¶ 7.02

After entry of the Preliminary Approval Order and prior to the date of the mailing of the Direct Mail Notice, the Settlement Administrator shall cause the Complaint, Long Form Notice and the Settlement Agreement to be made available on a dedicated Settlement Website to be administered by the Settlement Administrator. The parties have agreed on Kurtzman Carson Consultants ("KCC"), which has substantial experience with disseminating notice and serving as a claims administrator, as the Settlement Administrator. *See http://www.kccllc.com/.*

---

[2]    Pursuant to the Class Action Fairness Act, within ten days of this filing, notice of this proposed settlement will be served on the Attorney General of the United States, and upon the Attorneys General of all fifty states. 28 U.S.C. §1715 (a).

### C.  **Final Approval and Payments to Class Members**

Following the deadline for objections and requests for exclusion, the parties intend to petition the Court for Final Approval. The proposed Settlement Agreement provides that if Final Approval is granted, and any applicable appellate period has run, settlement funds will be distributed to all individuals without class members having to take any steps. First, court-approved expenses, attorneys' fees, and class representative fees will be paid. Then, all remaining funds will be distributed *pro rata* to class members who file valid and timely claims. If the aggregate value of any uncashed checks is such that it is economically feasible, there will be a second round of payments sent to eligible class members. If settlement checks are not cashed within sixty days of issuance, those checks will become void following disbursement of the second round of checks, remaining funds, if any, will be distributed to a *cy pres* recipient, subject to this Court's approval. *See* Exhibit 1, Stipulation of Settlement ¶ 4.02.

### D.  **Releases**

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice.  Plaintiff and all members of the Settlement Class who do not timely opt out will release Frontier from all claims that that arise out of or relate in any way to Frontier initiating telephone calls to Settlement Class Members during the Class Period, including all TCPA claims and all state law claims arising out of the alleged making of telephone calls.

### E.  **Opt Out Rights and Objections**

Members of the Settlement Class can opt out of the class by sending a written Request for Exclusion to the Settlement Administrator no later than ninety days following Preliminary Approval, or as allowed by the Court.  So-called "class" or "mass" opt-outs will not be permitted: In other words, no Settlement Class Member, or any person acting on behalf of or in

concert or in participation with that Settlement Class Member, may request exclusion of any

other Settlement Class Member from the Settlement Class.  Also within ninety days following

Preliminary Approval, any Settlement Class Member who wishes to object to the Settlement

Agreement must file with the Court and serve upon the Parties a written notice of the objections,

along with supporting papers setting forth the objector's grounds for objection.

## V.     THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE AND ADEQUATE

Federal Rule of Civil Procedure 23(e) requires judicial approval of any and all class

action settlements. Before approving a settlement, the Court must first find that the settlement is

"fair, reasonable and adequate." Fed.R.Civ.P. 23(e)(2).

The purpose of preliminary approval is to determine "that there is what might be termed

'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its

fairness." *In re Traffic Exec. Ass'n E.R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980). Preliminary

approval should be granted

> Where the proposed settlement appears to be the product of serious, informed,
> non-collusive negotiations, has no obvious deficiencies, does not improperly grant
> preferential treatment to class representatives or segments of the class and falls
> within the range of possible approval…

*In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995)); *see also Newberg*, at §11.41. The

Settlement Agreement satisfies each of these requirements.

Finally, in determining whether class action settlements should be approved, "[c]ourts

judge the fairness of a proposed compromise by weighing the Plaintiff's likelihood of success on

the merits against the amount and form of the relief offered in the settlement. . . . Courts do not

decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*.,

450 U.S. 79, 88 n.14 (1981) (internal citations omitted).

A. **Reasons For Preliminary Approval**

1. **The Settlement Is Fair Under the Circumstances.**

The proposed Settlement should be approved by this Court (and, *a fortiori*, preliminarily approved) as it presents a fair and equitable result for all parties. Class members who do not opt out will have to do nothing to receive their share of the settlement—with a minimum payment of $90 per class member, and those class members who received multiple calls will be paid an additional sum based on the number of calls received. This result, which compares very favorably to other settlements under the TCPA, was achieved in spite of Frontier's fierce defense of the case.

The Second Circuit has repeatedly noted the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *Bano v. Union Carbide Corp*, 273 F.3d 120, 129-30 (2d Cir. 2001) . "[C]ompromise and settlement are favored by the law." *Groves v. Hildreth & Son, Inc.*, No. 2:08-cv-00820, 2011 WL4382708 at *16-17 (S.D. W. Va. 2011).  The proposed settlement serves the overriding public interest in settling litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Multiple cases have held that the complexity, expense, and duration of class action litigation are factors that mitigate in favor of approval of a settlement. *See In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3rd Cir. 2001); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (complexity, expense, and duration as one of nine factors in determining the fairness of settlement). This case is no different.  The parties could have litigated the case to judgment and taxed the resources of the litigants and the Court. Instead, the parties elected to forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate voluntary resolution.

15

Moreover, in the context of TCPA settlements, the payment to class members achieved here exceeds settlements that have received court approval as fair, adequate, and reasonable. *See e.g.*, Ex. 8, *Benzion v. Vivint, Inc.* CV 12-61826, USDC, SD FL, August 11, 2014 (approving TCPA settlement with per claimant payout of $61.49 without multiplier for multiple violations); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving a settlement of $20 to $40 per class member); Ex. 9, *Desai v. ADT Security Services, Inc.* CV 1:11-cv-01925, USDC, ND IL, June 21, 2013) (approving settlement providing for payment of $48.37 to claimant, without multiplier for multiple violations); Ex. 10, *Spillman v. RPM Pizza, LLC*, USDC MD LA, CV 10-BAJ-SCR (May 23, 2010) (TCPA settlement approved with one sub class payout of $15 and second sub class receiving coupons worth between $6.71 to $11.99).

Further, the anticipated payment to class members in this case is particularly significant in light of the risks of ongoing litigation. If Frontier were to succeed on any of its defenses, including that the class could not be certified, settlement class members would recover nothing. *See Schulte v. Fifth Third Bank*, 805 F. Supp.2d 560, 582 (N.D. Ill. 2011). "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Id.* at 586 (citation omitted). "If the Court approves the [settlement], the present lawsuit will come to an end and [settlement class members] will realize both immediate and future benefits as a result." *Id.* Plaintiffs and settlement class members will receive their payments now, instead of years from now—or perhaps never. *See id.* at 582. In light of the risks of ongoing litigation and the modest amount of the individual statutory recovery relative to the costs of individual litigation, the settlement in this case is substantive and fair.

The settlement is particularly valuable to absent class members who, but for the settlement, likely would be unaware of the existence of their legal claims. Given the relatively small amounts of money involved, even those absent class members who were aware of their claims may have little financial incentive to pursue them. Additionally, absent this class action many class members' claims would be barred by the applicable statute of limitations and may be entitled to no compensation or refund at all.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Muhammad,* No. 2:07-cv-0423, 2008 WL 5377783 *10 (S.D. W. Va. Dec. 19, 2008). "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, proposed class counsel are experienced and knowledgeable in TCPA class actions. *See* Exs. 2-7.

Consideration of all of these factors supports preliminary approval.

**2.      The Settlement Resulted From Arm's Length Negotiations**

The requirement that a settlement be fair is designed to protect against collusion among the parties.  The proposed settlement was negotiated at arm's length by knowledgeable and experienced counsel, following an extended period of contested litigation. The settlement was arrived at only after two mediation sessions. The contested nature of this litigation, the experience of counsel on both sides of the case, the involvement of an experienced and skilled mediator, and the fair result reached are all illustrative of the arm's length negotiations that led to the proposed settlement.

### 3.       The Factual Record Was Well Developed Through Independent Investigation

The factual record in this case was well developed by Plaintiff's counsel and the

settlement was achieved only after full factual and expert discovery. The proposed settlement

was reached only after counsel had "a clear view of the strengths and weaknesses" of their case.

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985).  Counsel,

accordingly, were in a strong position to make an informed decision on the merits of

recommending the settlement, as they have a "full understanding of the legal and factual issues

surrounding [the] case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

These factors strongly support approval of the proposed Settlement.

### 4.       The Settlement Was Negotiated by Experienced Counsel

As detailed in the attached affidavits, Plaintiff's counsel are experienced in TCPA class

action litigation. Exs. 2-7. Defendant, at all times, was also represented by able counsel. Because

both Parties were represented by experienced, capable counsel in the negotiations, their

determination that the settlement is fair, adequate, and reasonable should be afforded a

"presumption of correctness."  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575

(S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is

the produce of arm's length negotiation conducted by experienced, capable counsel."). The

Settlement Agreement reflects the independent judgment of counsel for both Parties that its

terms are fair and reasonable under the circumstances. *See Trief v. Dun & Bradstreet Corp.*, 840

F. Supp. 277, 281 (S.D.N.Y. 1993) ("absent evidence of fraud or overreaching, [district courts]

consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of

counsel").

### 5.      Continued Litigation Would Create Significant Risk

The expense, complexity, and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement.  Litigating this class action through class certification and trial (and any appeals) would undoubtedly be time-consuming, expensive and risky.

Had this matter proceeded further, Defendant would have continued to press its *Spokeo*-based standing challenges as well as its contention that the dialer at issue does not qualify as an ATDS as defined by the TCPA.  Defendant would also have vigorously opposed certification of a litigated class.[3]  Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the strong possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

### B.  The Form and Content of Notice Proposed By the Parties Is the Best Notice Practicable Under the Circumstances

Once a settlement class is certified, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).[4]  Notice must

---

[3]      As described above (*see* Part III.B, *supra*), courts in many litigated TCPA cases have granted class certification. But Plaintiff recognizes that courts in other cases have denied certification—a risk that further warrants settlement here. *See Gene & Gene LLC v. BioPay, LLC*, 541 F.3d 318, 326-29 (5th Cir. 2008) (denying certification of a TCPA class where common issues did not predominate over individualized issues of consent); *Jamison v. First Credit Svs. Inc.*, 2013 WL 3872171, at *4-5 (N.D. Ill. July 29, 2013) (same; denying motion for reconsideration); *Leyse v. Lifetime Enter. Servs.*, 2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015) (denying class certification in TCPA case on ascertainability grounds; appeal pending).

[4]      Fed R. Civ. P. 23(e)(1) also requires that class members receive notice of a proposed settlement "in a reasonable manner."  Here, where the Parties propose to give notice of both certification *and* proposed settlement, "notice of certification and of the proposed settlement are properly combined, but must satisfy the requirement of Rule 23(c)(2)."  *Thomas v. NCO Fin. Sys. Inc.*, 2002 WL 1773035, at *7 (E.D. Pa. July 31, 2002) (citations omitted); *accord, e.g., In*

plainly inform class members of: (i) the nature of the action; (ii) the definition of the class

certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an

appearance through an attorney if the member so desires; (v) that the court will exclude from the

class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment. *Id.* Notice is adequate if it is "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacqueline*, 417

U.S. 156, 174 (1974).

The Settlement Agreement establishes a notice procedure that satisfies these standards.

First, the proposed Direct Mail Notice clearly communicates the information required by Fed R.

Civ. P. 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a process that the Parties

anticipate will provide individual notice by mail to the vast majority of Settlement Class

Members. The members of the class have previously been identified by their telephone numbers.

The Settlement Administrator will attempt to identify the current address information for the

owners of those telephone numbers through an appropriate investigation. Second, the Settlement

Administrator will also post the Complaint, Long Form Notice, and the Settlement Agreement to

be made available on a dedicated Settlement Website to be administered by the Settlement

Administrator.

---

*re IMAX Secs. Litig.*, 283 F.R.D. 178, 185 (S.D.N.Y. 2012); *In re Global Crossing Secs. &
ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004).

## VI.    CONCLUSION

For all of the above reasons, the proposed Settlement should be preliminarily approved.

Respectfully Submitted,


/s/*Edward A. Broderick*                              John W. Barrett
Edward A. Broderick                              Bailey & Glasser, LLP
Anthony I. Paronich                              209 Capitol Street
Broderick & Paronich, P.C.                       Charleston, West Virginia  25301
99 High Street, Suite 304                        (304) 345-6555
Boston, MA  02110                                jbarrett@baileyglasser.com
Tel (617) 680-0049                               (*pro hac vice*)
ted@broderick-law.com
anthony@broderick-law.com
(*pro hac vice*)

Nicholas J. Cicale, Federal Bar No. ct29283
CEnergy Law
24 Camp Avenue
P.O. Box 4658
Stamford, CT 06907
(203) 516-0668
nicholascicale@cenergylaw.com

Dated:  December 14, 2016


## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of the foregoing was filed through this

Court's CM/ECF system, and that all attorneys of record will be sent a copy of the same

electronically through that system.

                                        /s/ *Edward A. Broderick*
                                        Edward A. Broderick

DATED: December 14, 2016