**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT**

DIANA MEY, individually and on behalf of
a class of all persons and entities similarly
situated,

       Plaintiff,

v.

                                           Civil Action No. 3:13-cv-01191 (MPS)
                                           (Dated February 27, 2017)

FRONTIER COMMUNICATIONS
CORPORATION,

       Defendant.

**PLAINTIFF'S APPLICATION FOR
<u>ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD</u>**

# **TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 5

   A.   The requested fee is reasonable under the circumstances. ................................... 5

       1.  Time and Labor Expended by Counsel. ...................................................... 6

       2.  Magnitude and Complexities of the Litigation. .......................................... 7

       3.  Risk of the Litigation. ................................................................................ 7

       4.  Quality of Representation. .......................................................................... 9

       5.  Requested Fee in Relation to the Settlement. ............................................ 10

       6.  Public Policy Considerations. ................................................................... 11

   B.   A lodestar crosscheck confirms the reasonableness of the fee request. ............. 12

   C.   Plaintiff's efforts on behalf of the class merit the requested service award. ..... 13

Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015)...............................................15

*Amadeck v. Capital One Fin. Corp.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................................10

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
    301 F.R.D. 614 (S.D. Cal. Sept. 24, 2015) ............................................................................12

*Blum v. Stenson*,
    465 U.S. 886 (1984).................................................................................................................5

*Caitflo, L.L.C. v. Sprint Commc'ns Co. L.P.*,
    No. 11-00497, 2013 WL 3243114 (D. Conn. June 26, 2013)..................................................5

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ................................................................................................5

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)......................................................................................................3, 4, 8

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) .......................................................................................11

*Cubbage v. Talbots, Inc.*,
    No. 09-00911, ECF. No. 114 (W.D. Wash. Nov. 5, 2012).....................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ..........................................................................................14

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................................................................13

*Dixon v. Zabka*,
    No. 11-982, 2013 WL 2391473 (D. Conn. May 23, 2013) (Shea, J.)................................5, 11

*Dominguez v. Yahoo!, Inc.*,
    8 F. Supp. 3d 637 (E.D. Pa. 2014) .........................................................................................9

*Doyle v. Midland Credit Management, Inc.*,
    722 F.3d 78 (2d Cir. 2013)..................................................................................................2, 8

*Estrada v. iYogi, Inc.*,
No. 13–01989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ....................................9

*In re Fine Host Corp. Sec. Litig.*,
No. 97-2619, 2000 WL 33116538 (D. Conn. Nov. 8, 2000) ..............................12, 13

*Franklin v. Wells Fargo Bank, N.A.*,
Case No. 14-2349, 2016 WL 402249 (S.D. Cal. Jan. 29, 2016)............................9

*Fulton Dental, LLC v. Bisco, Inc.*,
No. 15-11038, 2016 U.S. Dist. LEXIS 118658 (N.D. Ill. Sep. 2, 2016) ...................4

*Garret, et al. v. Sharps Compliance, Inc.*,
No. 10-04030, ECF. No. 65 (N.D. Ill. Feb. 23, 2012) ........................................10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)............................................................................5

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013) ...........................................................................2, 4, 8

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................. *passim*

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
No. 15-113, 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ......................................5

*Manouchehri v. Styles for Less, Inc.*,
Case No. 14-2521, 2016 WL 3387473 (S.D. Cal. June 20, 2016)...........................9

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)................................................................. *passim*

*In re Medical X-Ray Film Antitrust Litigation*,
No. 93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ...................................11

*Rose v. Bank of Am. Corp.*,
No. 11-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ..............................10

*Silverberg v. People's Bank*,
No. 90-00600, 2000 WL 502621 (D. Conn. Mar. 17, 2000) .................................13

*Spillman v. RPM Pizza, LLC*,
No. 10-349 (E.D. La. May 23, 2010).................................................................10

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016).............................................................................4, 8

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014) ..................................................................8

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ...........................................................................5

*Varcallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)........................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................6

*Willix v. Healthfirst, Inc.*,
    No. 07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ..................................11

**Statutes**

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ......................................1

**Other Authorities**

Federal Rule of Civil Procedure 23(h)(1) ........................................................................1

At considerable peril of failure, and through the perseverance of Plaintiff's counsel, a common fund of $11 million has been established for the benefit of the class. Counsel now seeks a reasonable fee in recognition of their efforts, one that reflects the risk of loss assumed and substantial resources devoted in guiding this litigation to a successful conclusion. After more than three years of contested proceedings, fueled with extensive fact and expert discovery, and marked by Plaintiff's success in withstanding three dispositive motions, the parties turned their attention to compromise. The resulting settlement, poised for final approval, will result in significant cash distributions to class members, with no claims process required. Plaintiff's counsel funded the litigation and performed their work without payment.

Plaintiff thus moves the Court, pursuant to Federal Rule of Civil Procedure 23(h)(1), to approve: (1) a fee of one-third the settlement amount, plus expenses; and (2) a $20,000 service award to the class representative, whose rejection of Defendant's Rule 68 offer three years ago permitted the case to advance for the benefit of all class members. Both requests are fair and reasonable, and consistent with district, circuit, and Supreme Court precedent.

## Introduction

The parties' dispute has ridden a long road to settlement. On August 20, 2013, Plaintiff initiated this action on behalf of herself and a putative nationwide class, alleging that Defendant Frontier Communications Corporation placed thousands of nuisance telemarketing calls to consumers, without their consent, in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Frontier mounted a formidable defense to these allegations.

At the outset, Frontier sought to halt Plaintiff's suit by tendering a settlement in full satisfaction of Plaintiff's individual claims, and then moving to dismiss the case when Plaintiff

rejected the offer.[1] Frontier's motion was premised on: (1) the Supreme Court's 2013 decision in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), which held that an offer of complete relief under Federal Rule of Civil Procedure 68 mooted a named plaintiff's individual claims; and (2) the Second Circuit's decision in *Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78 (2d Cir. 2013), concluding that an unaccepted Rule 68 offer exceeding the plaintiff's potential recovery rendered moot the underlying case or controversy.

Anticipating Frontier's tactics, however, Plaintiff's counsel filed a class certification motion along with the complaint, relying on authority to the effect that individual claims could not be mooted while such a motion was pending. Plaintiff requested that a ruling on the class certification motion be deferred pending class discovery, and in aid thereof, served interrogatories and requests for production of documents. Nonetheless, Plaintiff was keenly aware that the entire action could be dismissed at any time on the strength of *Genesis* and *Doyle*.

Those concerns were allayed temporarily by the Court's rulings of November 18, 2014, and December 9, 2014, on reconsideration, which denied Frontier's dismissal motion. (ECF Nos. 88 and 106.) The denial was grounded in procedural distinctions attendant to the FLSA claims in *Genesis*, and, in a nod to Plaintiff's litigation strategy, the Court distinguished other authorities cited by Frontier in which the motion for class certification had come only after the offer of judgment.

Meanwhile, the parties could not agree on the proper scope of discovery. When Frontier moved to stay discovery while the Court contemplated the dismissal motion, Plaintiff countered with a comprehensive motion to compel. By order of December 5, 2014, the Court ruled for Plaintiff in significant part, requiring Frontier to produce its call logs, identify the hardware and

---

[1] Affidavit of Edward A. Broderick in Support of Plaintiff's Application for Attorneys' Fees, Costs and Incentive Award at ¶ 11, attached hereto as Exhibit A.

software used to make those calls, disclose how the numbers were acquired, and produce the scripts used in the solicitation process. Plaintiff also served seven third-party subpoenas and conducted multiple depositions in three states, obtaining call records and lead lists from Frontier's vendors.[2] Ultimately, Frontier and third-party subpoena respondents produced over ten thousand pages of documents for Plaintiff to review and catalog.[3] Discovery being a two-way street, Plaintiff produced over 1400 pages of documents responsive to Frontier's requests. Moreover, counsel for Plaintiff prepared their client to be deposed and defended that proceeding, in addition to defending the depositions of a pair of experts whom Plaintiff retained and consulted.[4]

Once again, however, the litigation was put on hold (ECF No. 125), this time pending the decision of the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). In *Gomez*, the Court granted certiorari on the precise question that had prompted Frontier's dismissal motion: whether "an unaccepted offer to satisfy the named plaintiff's individual claim [is] sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Id.* at 666. Plaintiff's case and the efforts of her counsel — this time following substantial discovery and motions practice — were again squarely at risk. While awaiting the Supreme Court's ruling, the parties engaged in good-faith mediation before the Honorable Edward A. Infante, but were unable to reach an accord.[5]

Plaintiff and her advocates were relieved when the Supreme Court issued its *Gomez* opinion distinguishing the result in *Genesis* and holding that "an unaccepted settlement offer has

---

[2] *Id.* at ¶ 16.
[3] *Id.*
[4] *Id.* at ¶ 18.
[5] *Id.* at ¶ 20.

no force." 136 S. Ct. at 666.[6] When proceedings resumed, the parties arranged for the

depositions of Frontier's experts and agreed on a schedule to, at long last, fully address class

certification. (ECF No. 134, allowed ECF No. 135). Less than four months after its reopening,

however, the case was imperiled again as Frontier filed a third motion to dismiss, this time

contending that Plaintiff lacked constitutional standing, in line with the Supreme Court's

decision a few days before in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Both sides

exhaustively briefed the new dispositive motion, after which the Court issued a series of thirty-

day stays to facilitate ongoing settlement discussions. Finally, on December 14, 2016, after

additional mediation and three months of intense negotiations, the parties reached a tentative

settlement, an amended version of which was preliminarily approved by the Court on January 26,

2017.

    The preliminarily approved settlement class consists of all individuals or entities whose

phone numbers were identified as having received: (i) on a cell phone, a call placed by means of

what Plaintiff contends was an Automatic Telephone Dialing System ("ATDS"); or (ii) in

instances where the number had been placed on the National Do Not Call Registry for more than

thirty days prior, two or more calls in a twelve-month period. Under the settlement, Frontier will

deposit $11 million into a common fund to pay class members, the class representative award,

attorney fees and costs, and expenses of administration. Notably, class members do not need to

file a claim in order to receive compensation, as checks will simply be distributed to class

---

[6] Post *Gomez* decisions demonstrate the risk faced at all phases of the case by Plaintiff as some
courts have held that even a plaintiff who rejects a settlement offer can have a case dismissed by
virtue of an adverse judgment entered by the court. *See, e.g.*, *Fulton Dental, LLC v. Bisco, Inc.*,
No. 15-11038, 2016 U.S. Dist. LEXIS 118658 *64-65 (N.D. Ill. Sep. 2, 2016) (allowing deposit
of funds and entering judgment for defendant).

members. Each class member will receive at least ninety dollars, with the balance of the fund distributed on a per call basis to class members who received multiple calls.

## Argument

### A. The requested fee is reasonable under the circumstances.

Awards in class actions are most often made in reference to the common fund doctrine, pursuant to which the Supreme Court has observed that "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000). The percentage method is the exclusive or predominant means of calculating common-fund attorney fees in three circuits. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (permitting alternative lodestar methodology in statutory fee litigation and in limited other circumstances, though warning that "the court must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests"); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

"[T]he trend in this Circuit," as is the case in nearly all the remaining federal courts of appeals, is also "toward the percentage method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 422 (2d Cir. 2010); *see also Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-113, 2016 WL 6542707, at *15 (D. Conn. Nov. 3, 2016); *Caitflo, L.L.C. v. Sprint Commc'ns Co. L.P.*, No. 11-00497, 2013 WL 3243114, at *2 (D. Conn. June 26, 2013). This Court has previously recognized and endorsed this approach. *Dixon v. Zabka*, No. 11-982, 2013 WL 2391473, at *6-*7 (D. Conn. May 23, 2013) (Shea, J.) (awarding percentage of common fund to plaintiffs' attorneys in wage-and-hour case). Courts prefer the percentage method because it

"directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citation and internal quotation marks omitted).

"[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In *Goldberger*, the Second Circuit collected the "traditional criteria [used] in determining a reasonable common fund fee." *Id.* at 50. Those factors include "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citation, internal quotation marks and alteration omitted).

Here, the *Goldberger* factors support Plaintiff's requested attorney fee award of one-third the common fund.

### 1.    Time and Labor Expended by Counsel.

Plaintiff is represented by national counsel Edward A. Broderick and Anthony Paronich of Broderick & Paronich, P.C., in Boston, Massachusetts; John W. Barrett of Bailey & Glasser LLP, in Charleston, West Virginia; and Matthew P. McCue of the Law Offices of Matthew P. McCue, P.C., in Natick, Massachusetts.[7] Together, counsel has expended 1,593 hours to date to advance Plaintiff's cause, and have incurred $77,646 in expenses. Counsel fended-off three dispositive motions, prevailed in a contested discovery dispute involving cross-motions to stay and to compel, engaged in extensive written discovery, retained and prepared experts, deposed witnesses, defended Frontier's depositions, and participated in lengthy settlement negotiations.

---

[7] The Affidavits of Counsel, detailing their qualifications and work on the case, are attached as Exhibits A, B, and C.

**2.      Magnitude and Complexities of the Litigation.**

The complaint sought to enforce significant public rights on a nationwide scale. Indeed, Plaintiff's experts were able to identify 36,219 unique telephone numbers across the country whose users will receive a meaningful cash payment. But those numbers identified only after extensive litigation vindicating Plaintiff's entitlement to discovery against a well-heeled, resourceful defendant. And those discovery battles had to be conducted in a swirl of uncertainty generated by constant, complex jurisdictional questions bearing on mootness and constitutional standing.

It is important to note, moreover, that the instant matter is readily distinguishable on this factor from the awards in *Goldberger* and *McDaniel*. The court of appeals in those cases affirmed the district courts' reasoning that plaintiffs' counsel had benefited "from the spadework done by federal authorities" during prior civil and criminal actions, *Goldberger*, 209 F.3d at 54, *i.e.*, the "previous unearthing of facts," *McDaniel*, 595 F.3d at 423, and, in analogous proceedings, "the prior mining of relevant case law and shoring up of legal arguments," *id.* The case at bar presents neither of those scenarios. No one drew Plaintiff's counsel a roadmap to assist them along the way with developing the necessary factual record or marshaling the legal arguments necessary to a successful outcome, either with respect to the novel jurisdictional issues in play or on the merits. Counsel brought their own shovels, now well-worn, and did their own digging.

**3.      Risk of the Litigation.**

The Second Circuit has repeatedly recognized that "[t]he level of risk associated with litigation . . . is 'perhaps the foremost factor' to be considered" in ascertaining a reasonable fee in a common-fund action. *McDaniel*, 595 F.3d at 424 (quoting *Goldberger*, 209 F.3d at 54 (internal

citation omitted)). The risk of zero recovery here was present from the moment Frontier offered Plaintiff a settlement that, upon rejection, gave rise to the initial motion to dismiss under *Genesis* and *Doyle*. A few months after Plaintiff navigated that minefield, the Supreme Court granted certiorari in *Gomez* to decide the precise issue on which Plaintiff thought she had finally prevailed. Because *Gomez* was also a TCPA case, there likely would be no room to distinguish an adverse holding. When the Supreme Court's decision proved supportive and finally green-lighted Plaintiff's claim to proceed, it was only because Justices Kennedy and Thomas rather unexpectedly switched sides from the opposite result three terms earlier in *Genesis.* Five weeks after that, the Court decided *Spokeo*, begetting yet another challenging motion to dismiss and providing Frontier with significant bargaining leverage during the protracted negotiations that followed.

But the constant threat of dismissal spawned by the Supreme Court was hardly the only element of risk counsel assumed. Frontier was poised to rigorously contest Plaintiff's attempt at class certification, and had the case progressed beyond that, Plaintiff would have been constrained to overcome stiff challenges concerning Frontier's vicarious liability for calls physically dialed by a third party, as well as whether the hardware and software used to make the phone calls was an ATDS as defined in the TCPA.[8] Frontier might even have petitioned the FCC to seek a declaratory ruling on the consent or ATDS issues. Such a petition could have delayed the resolution of this litigation for several years. In fact, such a petition, after being before the FCC for more than a year, is pending before the District of Columbia Circuit Court of Appeals right now. *See ACA Int'l v. F.C.C.*, No. 15-1211 (D.C. Cir. appeal filed July 10, 2015).

---

[8] Courts have reached different conclusions on the requirements of an ATDS. *Compare Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. 2014) (adopting Plaintiff' interpretation) *with Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637 (E.D. Pa. 2014) (adopting Defendant's interpretation).

The entirety of the litigation was fraught with risk, from beginning to end. Through counsel's stewardship, that risk was managed and eventually transformed into an $11 million certainty. This "foremost factor" in the *Goldberger* analysis weighs heavily in favor of the requested fee.

### 4.    Quality of Representation.

As detailed in the affidavits supporting preliminary approval of the settlement (ECF No. 154), Plaintiff's lawyers are well-versed in mass and class consumer litigation. Through the investigation and prosecution of the claims in this case, each member of Plaintiff's team has brought to bear his significant experience in TCPA consumer class actions. The quality of Plaintiff's representation has manifested itself in the results obtained, as the agreed payout of ninety dollars per class member without the need for a claims process plus additional sums for multiple violations compares favorably to other settlements under the TCPA. *Cf., e.g.*, *Manouchehri v. Styles for Less, Inc.*, Case No. 14-2521, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either $10 cash award or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14-2349, 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received approximately $71.16); *Estrada v. iYogi, Inc.,* No. 13–01989, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA settlement of $20 to $40 per class member); *Cubbage v. Talbots, Inc.*, No. 09-00911, ECF. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise certificate); *Garret, et al. v. Sharps Compliance, Inc.*, No. 10-04030, ECF. No. 65

(N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Spillman v. RPM Pizza, LLC*, No. 10-349 (E.D. La. May 23, 2010) (TCPA settlement approved with one subclass payout of $15 and second subclass receiving coupons worth $6.71 to $11.99).

      **5.**      **Requested Fee in Relation to the Settlement.**

There is no question that $11 million is a lot of money, but this is not one of those worrisome "cases that result in a very large monetary award," such that "the percentage method holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar of hourly rate multiplied by hours worked." *McDaniel,* 595 F.3d at 418-19. Recently, in *Amadeck v. Capital One Fin. Corp.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015), the district court conducted an exhaustive review of attorney fee award factors in connection with its final approval of the underlying TPCA class action settlement, devising a risk-adjusted fee structure to help govern its analysis.

The plaintiffs' counsel in *Amadeck* negotiated a settlement fund in excess of $75 million, of which the court awarded a fee of about 20.77%, or $15,668,265. The court, however, employed a diminishing scale to determine the proper overall percentage, in which it awarded 36% of the first $10 million recovered and only 15% of amounts in excess of $45 million. *See Amadeck*, 80 F. Supp. 3d at 807 and Table 4. In the case at bar, the *Amadeck* structure would support a fee award of $3,850,000, amounting to 36% of the first $10 million of the common fund ($3,600,000), plus 25% of the remaining $1 million ($250,000). Counsel here has requested a slightly smaller one-third award, or approximately $3,666,667.

Counsel's request for one-third of the common fund is "reasonable and consistent with the norms of class litigation in this circuit." *Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (collecting cases); s*ee also, e.g.*, *In re Crazy Eddie Sec.*

*Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (approving 33.8% award); *In re Medical X-Ray Film Antitrust Litigation*, No. 93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) (approving fee award amount to one-third of nearly $40 million class settlement, plus expenses). In fact, this Court has previously recognized that an award of slightly more than 30% was "less than the typical fee award of one-third that courts in this Circuit routinely award in wage and hour settlements." *Dixon v. Zabka*, No. 11-982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013) (citing *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470, at *7 (D. Conn. July 26, 2012)); *see also Goldberger*, 209 F.3d at 51 (noting "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest") (citing *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989)).

The *Goldberger* endorsement of incentive is honored by a one-third award, where, as here, class counsel made a substantial "investment of time without the certainty of compensation and spent several years defeating motions to dismiss and conducting discovery to enable them to adequately assess settlement offers." *In re Medical X-Ray Film*, 1998 WL 661515, at *7; *see also Willix*, 2011 WL 754862, at *7 ("Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation."); *In re Crazy Eddie*, 824 F. Supp. at 326 (observing that "class counsel made a substantial investment of time with no certainty of compensation," and "exhibited sustained and admirable tenacity in unearthing facts needed to develop these cases").

### 6.    Public Policy Considerations.

It is difficult to immediately conceive of a federal law that has been more universally welcomed and lauded than the one whose aim is to eradicate the unwanted proliferation of

strident, screeching solicitations interrupting our evening equanimity. Counsel's expenditure of time and resources in faithful enforcement of the TCPA have been in the best tradition of service, not only to their client, not merely to the class, but to the public at large. As one federal district court remarked, "In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 301 F.R.D. 614, 631 (S.D. Cal. Sept. 24, 2015). The Second Circuit is indisputably correct that "public policy supports the pursuit of meritorious class action litigation," *McDaniel*, 595 F.3d at 426, but not often more so than here.

**B. A lodestar crosscheck confirms the reasonableness of the fee request.**

The Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (citing *General Motors*, 55 F.3d at 820, *supra* at 5). The hours so documented "need not be exhaustively scrutinized by the district court," but can instead "be tested by the court's familiarity with the case." *Id.* For purposes of the lodestar cross check, courts often apply a multiplier "by examining such factors as the quality of counsel's work, the risk of the litigation and the complexity of the issues." *In re Fine Host Corp. Sec. Litig.*, No. 97-2619, 2000 WL 33116538, at *6 (D. Conn. Nov. 8, 2000) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)).

In that regard, "multipliers of between 3 and 4.5 have been common." *Silverberg v. People's Bank*, No. 90-00600, 2000 WL 502621, at *3 (D. Conn. Mar. 17, 2000) (citing *Rubin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130, 1991 WL 275757, at *1 (S.D.N.Y. Dec. 19, 1991) (4.4 multiplier used); *Pepsico Sec. Litig.*, No. 82-8403, 1985 WL 44682 (S.D.N.Y. Apr. 26, 1985) (3.3 multiplier); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (5x

multiplier); *In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (6x multiplier)). In *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011), the court approved a lodestar cross check of about 5.3, reviewing authorities decided after *Fine Host* to assure itself that "[c]ourts regularly award . . . multipliers from two to six times lodestar." *Id.* at 185 (quoting *Johnson v Brennan*, No. 10-4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) (collecting cases)).

Here, Plaintiff's counsel worked 1,593 hours, resulting in a base lodestar of $849,543.33 to date. The basis for this calculation and the reasonableness of counsel's rates is attested to by their attached affidavits.[9] The lodestar multiplier of Plaintiff's requested fee is 4.3, well within the range of reasonableness.

### C.  Plaintiff's efforts on behalf of the class merit the requested service award.

Finally, Plaintiff requests that she be granted a service award in compensation for the time and effort she expended in successfully prosecuting this case to a successful. Service awards acknowledge representative plaintiffs' hard work and sacrifices in support of the class, as well as their promotion of the public interest. Courts around the country allow such awards to named plaintiffs or class representatives. *See Varcallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005); s*ee also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (recognizing that "incentive awards" for named plaintiffs as high as $35,000 and even $45,000 "are within the range of what other courts have found to be reasonable" (citation omitted)).

---

[9] *See* Exhibit A (Broderick) at ¶¶ 21-24; Exhibit B (Barrett) at ¶¶ 8-11; Exhibit C (McCue) at ¶¶ 8-12. As further set forth in the affidavits, Class Counsel's hourly rates are consistent with the hourly rates of attorneys of similar background and experience, as well as with the rates recently used by other district courts to conduct a lodestar cross-check.

In determining whether to approve a service or incentive award, courts in this circuit consider

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (citations omitted).

Here, Plaintiff seeks a modest service award of $20,000, which Frontier does not oppose. Plaintiff has been closely involved in the litigation of this matter since its inception in 2013. She was deposed and constrained to respond to numerous discovery requests. Most importantly, Plaintiff elected to forgo short-term personal gain for the long-term benefit of the entire class by rejecting Frontier's initial settlement offer in complete satisfaction of her individual claims. In recognition of her selfless service, the requested award is reasonable.

## Conclusion

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant this Application for Attorney Fees in its order to be entered after the May 31, 2017 Final Approval Hearing, and authorize such fees in the amount of one-third the negotiated common fund ($3,666,667) approve an additional payment to counsel of $77,646.99 for the necessary costs and expenses of litigation, and permit the distribution to Plaintiff of a $20,000 service award from the common fund.

Dated: February 27, 2017

                                        **Respectfully submitted**,
                                        **Diana Mey**

                                        By Counsel:

*/s/ Edward A. Broderick*
Edward A. Broderick (*pro hac vice*)
Anthony I. Paronich (*pro hac vice*)          John W. Barrett (*pro hac vice*)
Broderick & Paronich, P.C.                    Bailey & Glasser LLP
99 High Street, Suite 304                     209 Capitol Street
Boston, MA 02110                              Charleston, West Virginia 25301
(617) 680-0049                                (304) 345-6555
ted@broderick-law.com                         jbarrett@baileyglasser.com
anthony@broderick-law.com

Nicholas J. Cicale, Federal Bar No. ct29283   Matthew P. McCue (*pro hac vice*)
CEnergy Law                                   Law Offices of Matthew P. McCue, P.C.
24 Camp Avenue                                1 South Avenue, Third Floor
P.O. Box 4658                                 Natick, MA 01760
Stamford, CT 06907                            (508) 655-1415
(203) 516-0668                                mmcue@massattorneys.net
nicholascicale@cenergylaw.com
*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

attorneys of record.


/s/ Edward A. Broderick
Edward A. Broderick